UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN WILSON COWAN,

                *Plaintiff,*

      v.                                Civil Action No.: 21-0895 (RMM)

FEDERAL COMMUNICATIONS
COMMISSION,

                *Defendant*.

## DEFENDANT'S MOTION FOR A PROTECTIVE ORDER
## AND MEMORANDUM IN SUPPORT

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DEDRA S. CURTEMAN
IL Bar #6279766
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2550
E-mail: Dedra.Curteman@usdoj.gov

November 5, 2021

## **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................- 2 -

ARGUMENT...........................................................................................................................- 6 -

    I.    The FCC Is Likely to Succeed on the Merits of Its Claim That the Inadvertently Produced Information Is Protected under FOIA Exemption 4................................................................- 6 -

    II.   The Court Should Order Plaintiff and Her Counsel Not to Use or Disseminate the Inadvertently Produced Information During the Pendency of This Case. .............................- 9 -

CONCLUSION.......................................................................................................................- 13 -

## TABLE OF AUTHORITIES

*ACLU v. Dep't of Def.*,
 Civ. A. No. 09-8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012) ................................... 11

*Baker & Hostetler LLP v. Dep't of Com.*,
 473 F.3d 312 (D.C. Cir. 2006) ............................................................................................... 7

*Bd. of Trade of City of Chi. v. Commodity Futures Trading Comm'n*,
 627 F.2d 392 (D.C. Cir. 1980) ............................................................................................... 7

*Critical Mass Energy Project v. NRC*,
 975 F.2d 871 (D.C. Cir. 1992) (en banc) .............................................................................. 7

*Food Marketing Inst. v. Argus Leader*,
 139 S. Ct. 2356 (2019) ........................................................................................................... 8

*Goodyear Tire & Rubber Co. v. Haeger*,
 137 S. Ct. 1178 (2017) ......................................................................................................... 10

*John Doe Agency v. John Doe Corp.*,
 493 U.S. 146 (1989) ............................................................................................................... 6

*Kissinger v. Reps. Comm. for Freedom of the Press*,
 445 U.S. 136 (1980) ............................................................................................................... 6

*Nat'l Parks & Conservation Ass'n v. Morton*,
 498 F.2d 765 (D.C. Cir. 1984) ........................................................................................... 6, 7

*Piper v. Dep't of Just.*,
 294 F. Supp. 2d 16 (D.D.C. 2003) ................................................................................. 10-11

*Pub. Citizen Health Rsch. Grp. v. FDA*,
 704 F.2d 1280 (D.C. Cir. 1983) ............................................................................................ 7

*Pub. Citizen Health Rsch. Grp. v. FDA*,
 953 F. Supp. 400 (D.D.C. 1996) ............................................................................... 10, 11, 12

*United States v. Moussaoui*,
 483 F.3d 220 (4th Cir. 2007) .............................................................................................. 10

Defendant, the Federal Communications Commission ("FCC"), by and through undersigned counsel, respectfully requests that this Court enter a protective order to shield from disclosure a document containing confidential commercial information that the FCC received during an administrative proceeding from a third party and inadvertently produced to Plaintiff as part of the present litigation.

As demonstrated herein, information in this document is protected from disclosure under the Freedom of Information Act ("FOIA") Exemption 4. Unfortunately, in a production on Friday, October 22, 2021, FCC staff mistakenly failed to redact this information. On multiple occasions since—beginning with an e-mail that FCC counsel sent Plaintiff's counsel within hours of the production—the FCC has advised Plaintiff that its October 22 production (the "Erroneous Production") included material that was inadvertently released without appropriate redaction. In each of those communications, the FCC requested that Plaintiff and her counsel destroy without using or disseminating the Erroneous Production and accept in its place a substitute production (the "Corrected Production"), which the FCC produced on Monday, October 25. Plaintiff has consistently refused to do so. Moreover, Plaintiff believes that she may use or disseminate the confidential commercial information contained in the Erroneous Production. Indeed, Plaintiff's counsel has said that Plaintiff may choose to do so unless the FCC should move for relief from this Court by November 5, 2021. *See* Ex. 1 (Oct. 28, 2021 E-mail from A. Belendiuk). Defendant is left without further recourse except to seek judicial intervention.

For the foregoing reasons, the FCC respectfully moves the Court to issue an order directing that, while this case remains pending, Plaintiff and her counsel will not use or disseminate the contested document from the Erroneous Production: a five-page submission from Sinclair Broadcast Group ("Sinclair") to the FCC dated May 3, 2019 (the "May 2019 Response"). Pursuant

to Local Civil Rule 7(m), the undersigned has conferred with Plaintiff's counsel, who has indicated that Plaintiff opposes this Motion.

## BACKGROUND

This case concerns a FOIA request that Plaintiff submitted to the FCC on October 28, 2020. ECF No. 11 ¶ 8 ("Answer"); *see* Ex. 2 (Plaintiff's FOIA Request).  The request seeks copies of "[a]ll documents or filings Sinclair submitted to the FCC or its Bureaus . . . on July 31, 2018, May 2, 2019, July 12, 2019, and August 6, 2019[,] and any supplements thereto," as referenced in a consent decree that the FCC issued in May 2020 to settle questions concerning Sinclair's candor before the Commission in a license transfer proceeding.  *Id.*; *see* ECF No. 14-1 ¶ 13 ("July 29, 2021 Santini Decl.").

The FCC searched its records and identified four sets of documents responsive to Plaintiff's request.  Ex. 3 (Citrin Decl.) ¶ 6.  In a letter to the agency, Sinclair opposed the release of substantial portions of those documents.  *See* July 29, 2021 Santini Decl. ¶ 16.  Among other things, Sinclair objected to the disclosure of "commercially sensitive financial information underlying station valuations."  Ex. 4 (Jan. 21, 2021 Sinclair Objection Letter), at 4.  Sinclair asserted that it "would not, in the ordinary course of business, reveal [this] information" publicly, and that it uses employee confidentiality agreements and non-disclosure agreements with third parties to preserve the information's confidentiality.  *Id.* at 5-6.  Sinclair explained that the "broadcast television industry is highly competitive," and that disclosure of the materials at issue would adversely affect "Sinclair's ability to successfully compete," including by "revealing the company's process for pricing station sales," to the advantage of other companies "seeking to compete with, buy stations from, or sell stations to Sinclair."  *Id.* at 5.  Sinclair further advised the

FCC that "[p]ublic release of the proprietary commercial information" at issue could harm "other television stations to which [that information] pertain[ed]." *Id.*

On April 1, 2021—before the FCC had completed its consideration of Sinclair's objections and Plaintiff's subsequent letter to the agency in response—Plaintiff filed her complaint in this case. *See* ECF No. 1 ("Complaint"). On May 5, 2021, the FCC's Media Bureau granted Plaintiff's FOIA request in part and denied it in part. *See* July 29, 2021 Santini Decl. ¶ 20. The agency released in full certain commercial agreements that Sinclair agreed were no longer confidential— a production of 261 pages. *Id.* ¶ 21. Invoking FOIA Exemption 4, the agency withheld the remainder of the documents. *Id.* ¶¶ 21-22.

The FCC answered Plaintiff's Complaint on June 4, 2021. *See* ECF No. 11. Plaintiff moved for summary judgment on August 30. ECF No. 15 at 2.

Seeking to narrow the scope of the parties' dispute as presented in Plaintiff's memorandum in support of summary judgment, FCC staff conducted an additional review of the Sinclair documents that the agency had declined to release. Citrin Decl. ¶ 13. To allow the agency to complete that review and produce any reasonably segregable, non-confidential information, the Court stayed the existing briefing schedule and directed the parties to confer on a revised schedule once the agency made any additional disclosures. *See* Sept. 28, 2021 Order.

In a phone call on October 7, 2021, FCC staff explained to counsel for Sinclair that the agency was considering the release of additional documents (and portions of documents) that the agency had initially withheld but that staff had now preliminarily determined could be segregated from Sinclair's confidential, commercial information consistent with Exemption 4. Citrin Decl. ¶ 15. On October 15, 2021, Sinclair advised the FCC and Plaintiff's counsel that, "in an effort to cooperate with the [agency]," Sinclair would significantly narrow its continued objections to the

release of the documents responsive to Plaintiff's FOIA request.  Citrin Decl. ¶ 17.  Sinclair agreed

to allow the FCC to release nearly all of the additional material that the agency proposed to release.

*See* Ex. 5 (Oct. 15, 2021 Sinclair Letter) at 1.  Sinclair did not, however, withdraw or otherwise

limit its objections to the release of documents or portions of documents that Sinclair and the FCC

agreed contained confidential commercial information.  *See id.* at 1-3.  That information included

historical and projected cash-flow figures for certain broadcast television stations that Sinclair

proposed to acquire from Tribune Media Company ("Tribune") and then immediately to divest as

part of a larger proposed transaction between Sinclair and Tribune.  Citrin Decl. ¶ 16.  The material

that the FCC did not propose to release also included information bearing on Sinclair's

methodology for assessing the value of broadcast television stations.  *See id.*

After considering Sinclair's objections, FCC staff prepared an additional production to

supplement the agency's initial response to Plaintiff's FOIA request.  Citrin Decl. ¶ 18.  On

October 22, 2021, undersigned counsel transmitted a digitally compressed ("zip") file containing

this additional production to Plaintiff's counsel at 4:34 p.m. Eastern Daylight Time.  Ex. 6 (Oct.

22, 2021 E-mail from D. Curteman).  Unbeknownst at that time to the FCC, this zip file contained

a copy of the May 2019 Response in which the document's final paragraph, which the FCC had

intended to redact to protect material subject to FOIA Exemption 4, was mistakenly highlighted

instead of redacted.  Citrin Decl. ¶ 21.

At 7:50 p.m., as a courtesy to Sinclair, FCC staff forwarded this additional production to

Sinclair's outside counsel.  Ex. 7 (Oct. 22, 2021 E-mail from S. Nilsson).  At 8:38 p.m., Sinclair's

counsel alerted FCC staff that the production included, in unredacted form, information in the May

2019 Response that concerned how Sinclair determined the purchase price for certain television

stations.  Citrin Decl. ¶ 24.  Sinclair's counsel emphasized that this was sensitive commercial

information confidential to Sinclair.  *See id.*  Counsel also observed that the mistakenly unredacted passage revealed confidential commercial information of the third-party stations.  *See id.*

At 11:03 p.m., an attorney in the FCC's Office of General Counsel advised Plaintiff's counsel that the afternoon's production contained "confidential commercial information that the FCC obtained from Sinclair Broadcasting and released [in the production], inadvertently, in unredacted form."  Ex. 8 (Oct. 22, 2021 E-mail from S. Citrin).  This FCC attorney asked Plaintiff's counsel to discard the production without reviewing or sharing it, and to confirm that he had done so.  *Id.*  Counsel represented that the agency would then "provide a replacement production, in correctly redacted form."  *Id.*

Plaintiff's counsel did not initially respond to the FCC's request.  Citrin Decl. ¶ 26. Thereafter, on October 25, the undersigned sent Plaintiff's counsel a new zip file containing the FCC's replacement production and requested that Plaintiff and her counsel destroy all copies of the Erroneous Production that contained the inadvertently disclosed confidential commercial information. Ex. 9 (Oct. 25, 2021 E-mail from D. Curteman).  On October 26, undersigned counsel again asked Plaintiff's counsel to respond "as soon as possible whether [Plaintiff] has agreed to claw-back and destroy all copies of the inadvertently non-redacted information."  Ex. 10 (Oct. 26, 2021 E-mail from D. Curteman at 11:53 a.m.).  When Plaintiff's counsel sent correspondence on another subject without responding on the request, undersigned counsel asked again.  Ex. 11 (Oct. 26, 2021 E-mail from D. Curteman at 5:32 p.m.).  At 5:42 p.m., Plaintiff's counsel responded: "After conferring with my client, the decision was made not to delete the documents sent on Friday."  Ex. 12 (Oct. 26, 2021 E-mail from A. Belendiuk).

**ARGUMENT**

The FCC took immediate steps to rectify its error in failing to redact Sinclair's confidential commercial information. Plaintiff, however, has taken the position that she will retain the inadvertently produced information unless required by this Court to destroy it.  Because the FCC is likely to succeed on the merits of its claim that the inadvertently produced material in Sinclair's May 2019 Response is exempt from public disclosure under FOIA Exemption 4, and because the Erroneous Production was made under this Court's supervision, the Court should exercise its inherent authority to prevent Plaintiff and her counsel from using or disseminating the inadvertently produced copy of the May 2019 Response during the pendency of this litigation.[1]

**I.     The FCC Is Likely to Succeed on the Merits of Its Claim That the Inadvertently Produced Information Is Protected under FOIA Exemption 4.**

FOIA mandates disclosure of government records unless the record or a portion thereof falls within one of FOIA's enumerated exemptions.  *See* 5 U.S.C. § 552(b).  The Court may compel disclosure only of records that do not fall within an exemption.  *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  FOIA's exemptions "are intended to have meaningful reach and application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

FOIA Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  It is intended to safeguard the interests of both the government and submitters of information.  *See e.g., Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1984) (concluding that

---

[1]     If the FCC prevails on the merits of its claim that the material in question is shielded from public disclosure under FOIA Exemption 4, the Court should then order Plaintiff and her counsel to destroy all copies of Sinclair's May 2019 Response obtained from the FCC's Erroneous Production.

legislative history "firmly supports the inference that [Exemption 4] is intended for the benefit of persons who supply information as well as the agencies which gather it"), *abrogated on other grounds by Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019).  Exemption 4 thus encourages submitters to furnish useful commercial or financial information to the government voluntarily and provides the government with an assurance that required submissions will be reliable.  *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 878 (D.C. Cir. 1992) (en banc).  The exemption also affords protection to those submitters who are required to furnish commercial or financial information to the government by safeguarding them from the competitive disadvantages that could result from disclosure.  *See Nat'l Parks*, 498 F.2d at 768.

When information does not contain trade secrets, Exemption 4 applies if the withheld information is (a) commercial or financial in character, (b) obtained from a person, and (c) privileged or confidential.  *See* 5 U.S.C. § 552(b)(4).  Here, because the information that the FCC inadvertently produced to Plaintiff was obtained by the agency from Sinclair, there can be no dispute that Exemption 4's second requirement is satisfied in this case.  As explained below, the information in question is also "commercial or financial in character" and "confidential."

*Commercial or financial information.*  The term "commercial or financial," under Exemption 4, "reaches . . . broadly."  *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006).  It includes information relating to the submitter's business or trade, *see Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983), or to the business or trade of a third party, *see Bd. of Trade of City of Chi. v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 405 (D.C. Cir. 1980), *abrogated on other grounds by Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982).

The information in Sinclair's May 2019 Response that the FCC inadvertently produced to Plaintiff describes "broadcast cash flow" figures for two television stations, KDAF and KIAH, that, in 2017, were owned by Tribune.  At the time, Sinclair and Tribune contemplated that Sinclair would acquire the licenses for these and other television stations from Tribune, and that as part of that transaction, to keep Sinclair in compliance with the FCC's "broadcast multiple ownership" rules, Sinclair would concurrently divest KDAF and KIAH.  Tribune provided Sinclair the cash-flow figures of KDAF and KIAH solely for Sinclair's use in the course of that contemplated transaction, so that Sinclair could calculate an appropriate purchase price for those stations.  In addition to this cash-flow information, the paragraph that the FCC inadvertently produced to Plaintiff discloses the numerical multiple that Sinclair used, in conjunction with the cash-flow figures, to derive what it considered the appropriate purchase price for those stations.  The inadvertently produced information is thus financial in nature, and it implicates the commercial interests of both Sinclair and the third-party television stations KDAF and KIAH.

*Privileged or confidential*.  A person's commercial or financial information is considered "confidential" under Exemption 4 "whenever it is customarily kept private, or at least closely held, by the person imparting it."  *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019).  Especially when "commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4."  *Id.* at 2366.

Here, Sinclair has represented to the FCC that it "would not, in the ordinary course of business, reveal [to the public] the information contained in the Confidential Materials" provided to the agency—including the information inadvertently produced in the Erroneous Production. Jan. 21, 2021 Sinclair Objection Letter at 5.  Sinclair has further explained that it "maintains

internal processes to ensure that such information is protected from public disclosure": "employees are bound by [company] policies and practices requiring confidentiality," and information is conveyed to third parties only "on a need-to-know basis (i.e., to prospective station buyers) and subject to arrangements to preserve confidentiality." *Id.* at 5-6.

Moreover, Sinclair provided the information in question to the FCC under a confidentiality request, pursuant to 47 C.F.R. § 0.459. Citrin Decl. ¶ 7. In doing so, Sinclair explained that its "submission include[d] commercially sensitive financial information underlying station valuations, the disclosure of which could result in substantial competitive harm to Sinclair (or other parties, including Tribune) in subsequent purchase or sale negotiations or bids." *Id.* Sinclair reiterated that it "would not, in the ordinary course of business, reveal this information to the public." *Id.* Under the FCC's rules, Sinclair's confidentiality request entitled it to assurance that the FCC would invoke FOIA Exemption 4 should it receive a FOIA request for disclosure of this information. 47 C.F.R. § 0.457(d).

For these reasons, the FCC is exceedingly likely to be able to prove at summary judgment that the inadvertently produced material as to which it seeks the Court's protection here constitutes confidential commercial information covered by FOIA Exemption 4.

## II.   The Court Should Order Plaintiff and Her Counsel Not to Use or Disseminate the Inadvertently Produced Information During the Pendency of This Case.

The FCC took immediate steps to rectify its error in failing to redact Sinclair's confidential commercial information—including by notifying Plaintiff's counsel within hours of transmitting the Erroneous Production, and by promptly providing the Corrected Production. Plaintiff has nonetheless taken the position that she will retain and "freely disseminate" the inadvertently produced information unless required by this Court to desist. Oct. 26, 2021 E-mail from A. Belendiuk. Allowing her to do so would pose a real risk of serious harm to Sinclair's commercial

interests—as well as to the commercial interests of KDAF and KIAH.  *See* Oct. 15, 2021 Sinclair Letter at 5.  The "broadcast television industry is highly competitive," *id.* at 4, and making public the cash-flow multiple that Sinclair applied in its valuation of KDAF and KIAH could negatively affect "Sinclair's ability to successfully compete" with other companies when selling or purchasing television stations in the future, *see id.* at 5.  Similarly, public disclosure of the stations' cash-flow figures could harm their current owner in future purchase or sale transactions.  *See id.* In addition, public disclosure of the inadvertently produced information risks harm to the FCC: parties may be more reticent, in the future, to share confidential commercial information with the agency if they fear that a ministerial error on the part of agency staff will result in public dissemination of material that competitors can use against them.   Because the Erroneous Production was made under this Court's supervision, consistent with the Court's Order on September 28, 2021, the Court should exercise its inherent authority to shield from misuse and public disclosure the inadvertently produced copy of Sinclair's May 2019 Response.

"It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.'  Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812), and *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *accord Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *see also Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400, 405 (D.D.C. 1996) (citing *Gumbel v. Pitkin*, 124 U.S. 131, 146 (1888), in support of "the court's power to regulate the use of information or documents, obtained through means other than discovery, in a proceeding before the court").

Precedent in this district supports the exercise of the Court's inherent authority to protect information that the government intended to withhold pursuant to a FOIA exemption but instead inadvertently produced.  *See Pub. Citizen*, 953 F. Supp. at 404; *see also Piper v. Dep't of Just.*, 294 F. Supp. 2d 16, 27 n.5 (D.D.C. 2003) ("[T]he Court expects plaintiff to deliver [an inadvertently produced photograph that could have been withheld under FOIA Exemption 7(c)] to [the government] if [the government] so request[s]."), *aff'd on other grounds*, 222 F. App'x 1 (D.C. Cir. 2007).  As recognized in *Public Citizen*, "[i]f the [mistakenly disclosed] information is not subject to disclosure under exemption four, it should not be publicly available." *Pub. Citizen*, 953 F. Supp. at 404.

Elsewhere, too, the FCC is aware of at least one other case—with some similarities to this one—in which a court has required plaintiffs to return or destroy inadvertently produced documents that contained information subject to a FOIA exemption.  *See ACLU v. Dep't of Def.*, Civ. A. No. 09-8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012).  In *ACLU*, the plaintiffs sued to expedite the processing of their FOIA request by federal agencies.  *Id.* at * 1.  In a production an agency made pursuant to a court order governing "the scope and timeline of" the agency's response to the plaintiffs' FOIA request, the agency mistakenly included copies of a document that contained classified information concerning the threat classification of military detainees.  *Id.* After concluding that this document was "properly classified under FOIA Exemption 1"—which protects, among other things, classified national security information—the court exercised its inherent authority to direct the plaintiffs "to return all copies of the Document in their possession" to the agency.  *Id.* at *5.  In rejecting the plaintiffs' claim that the court lacked authority to impose this remedy, the court explained:

> Plaintiffs initiated this FOIA action so that the Court would compel the Government to respond to their FOIA requests.  That compelled process has generated a situation

in which Plaintiffs seek to maintain their unauthorized possession of a classified document.  Plaintiffs may not now claim the Court lacks the authority to supervise the very process that they themselves set in motion.

*Id.*

Similarly, here, Plaintiff initiated this FOIA litigation to compel the FCC to respond to her FOIA request.  After the Court stayed further proceedings in the case for a limited period so that the agency could make additional disclosures, FCC staff made an inadvertent disclosure that gave Plaintiff and her counsel possession of confidential, third-party commercial information.  If this Court ultimately agrees with the FCC regarding the application of FOIA Exemption 4, Plaintiff's possession of this information is unauthorized.  *See Pub. Citizen*, 953 F. Supp. at 404.

Despite the FCC's repeated requests—beginning within hours of the inadvertent production—Plaintiff and her counsel have refused to destroy the Erroneous Production, or to agree not to use or disseminate the information that the FCC maintains is exempt from disclosure under FOIA Exemption 4.  *See supra* "Background."  Instead, Plaintiff's counsel has represented that, unless this Court directs otherwise, Plaintiff will, "if she so chooses, freely disseminate" that information.  Oct. 26, 2021 E-mail from A. Belendiuk.  To prevent Plaintiff from circumventing judicial process in this proceeding by using or disseminating the contested information before this Court adjudicates the parties' respective FOIA claims on the merits, the Court should order that— for the duration of this case—Plaintiff and her counsel must not use or disseminate any of the information contained in the copy of Sinclair's May 2019 Response that the FCC inadvertently produced in the Erroneous Production.

**CONCLUSION**

While the FCC takes its FOIA obligations seriously, FOIA processors, as with all professionals, make rare, inadvertent mistakes.  The Court has the power to correct those mistakes when an agency exercises diligence upon discovering them.  To hold otherwise would require perfection from agencies, prompting them to spend more time on each FOIA request and slowing the overall availability and release of information to the public.

For the foregoing reasons, the Court should grant the FCC's Motion for a Protective Order and direct Plaintiff and her counsel not to use or disseminate the inadvertently produced material identified above during the pendency of this case.  If the FCC prevails on the merits of its claim that the material at issue is shielded from public disclosure under FOIA Exemption 4, the Court should then order Plaintiff and her counsel to destroy all copies of Sinclair's May 2019 Response obtained due to the agency's inadvertent error.

Dated: November 5, 2021                    Respectfully submitted,

                                           MATTHEW M. GRAVES, D.C. Bar. #481052
                                           United States Attorney

                                           BRIAN P. HUDAK
                                           Acting Chief, Civil Division

                                           By:  */s/ Dedra S. Curteman*
                                           DEDRA S. CURTEMAN
                                           IL Bar #6279766
                                           Assistant United States Attorney
                                           555 4th Street, N.W.
                                           Washington, D.C. 20530
                                           Tel: (202) 252-2550
                                           E-mail: Dedra.Curteman@usdoj.gov

                                           *Of Counsel:*
                                           Sarah Citrin
                                           Office of General Counsel
                                           Federal Communications Commission